# In the United States Court of Federal Claims

WESLEY TURNER,

          Plaintiff,

          v.

THE UNITED STATES,

          Defendant.

No. 25-790
Filed May 11, 2026

Wesley Turner, Rio Rancho, New Mexico, plaintiff, pro se.
Tate N. Walker, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the government's partial motion to dismiss, granting in part and denying in part the government's motion for judgment on the administrative record, and denying Mr. Turner's cross-motion for judgment on the administrative record**

Wesley Turner, proceeding without an attorney, sued the government relating to his time in the U.S. Air Force, his retirement from service, and the processing of his retirement and disability payments by the Defense Finance and Accounting Service (DFAS). The government moves to dismiss Mr. Turner's complaint, in part, for lack of jurisdiction over his tort, criminal, tax, and time-barred claims. The government moves for judgment on the administrative record on the remaining claims, and Mr. Turner cross-moves for judgment on the administrative record.

The government is correct that this court does not have jurisdiction over Mr. Turner's claims alleging torts, criminal actions, or tax issues, or claims that accrued more than six years ago. The court will therefore grant the government's partial motion to dismiss. The administrative record supports the decision of the Air Force Board for Correction of Military Records with respect to Mr. Turner's retirement status. But because the administrative record is unclear on how DFAS

1

calculated the alleged overpayment to Mr. Turner or whether that calculation was correct, the court will only partially grant the government's motion for judgment on the administrative record.

## I.    Background

Mr. Turner served in the Air Force for twenty years, from 1995 to 2015. ECF No. 14-2 at 25.[1] The military initially retired Mr. Turner under the length-of-service provision of 10 U.S.C. § 8911. Mr. Turner had a service-connected disability rating of over 50 percent and received both retirement and disability pay. AR299-300 [¶¶8-10]. Although the general rule prohibits a retired servicemember from receiving both kinds of pay concurrently, Mr. Turner qualified for an exception under 10 U.S.C. § 1414(a)(1), which allows concurrent payments to retired servicemembers with at least twenty years of service and a service-connected disability rating of at least 50 percent. *Id.* In 2015, just before his retirement, Mr. Turner filed a petition with the Air Force Board for Correction of Military Records. ECF 14-2 at 8-9. Mr. Turner asked the board to (1) change his active-duty retirement to medical retirement; (2) include periods of training and education to accurately reflect his service; (3) remove the diagnosis of schizophrenia from his medical records; (4) remove evidence of a security violation from his records; and (5) adjust his disability rating to 75 percent. ECF No. 14-2 at 8; AR14. Shortly after that, Mr. Turner was honorably discharged with twenty years of active service. AR15.

To address Mr. Turner's petition, the board received advisory opinions from the Air Force Personnel Center, the board's medical advisor, and the board's psychological advisor. AR15-16; ECF No. 14-2 at 33-43. The Air Force Personnel Center recommended that the board reject Mr.

---

[1] The government submitted a two-part administrative record to the court through ECF. ECF Nos. 14-1, 14-2. For the administrative record materials from DFAS (ECF No. 14-1), the court will use the designation AR. For the administrative record materials from the Air Force Board for Correction of Military Records (ECF No. 14-2), the court will use the pagination from the document's table of contents.

Turner's requests because there was no error in the processing of Mr. Turner's retirement. ECF No. 14-2 at 4, 34. The medical advisor recommended that, if the evidence supported an error in Mr. Turner's retirement for years of service, he should be assigned a 70 percent disability rating under the standards applied by the Department of Veterans Affairs. *Id*. at 39. The psychological advisor recommended that the board partially grant Mr. Turner's application, to reflect retirement with a 70 percent disability rating for major depressive disorder with generalized anxiety disorder. *Id*. at 43. Before making its decision, the board allowed Mr. Turner to review the advisory opinions, submit further evidence, and provide comments. *Id.* at 5, 46. Mr. Turner did not respond, and the board issued its decision. *Id*. at 5-6; AR307.

The board recommended that Mr. Turner's military records be corrected to reflect a medical retirement at a 70 percent disability rating. AR17. The board rejected Mr. Turner's remaining requests, finding no evidence of error or injustice. *Id*. The deputy director of the Air Force Review Boards Agency ordered that the board's recommendation be implemented. AR19.

DFAS then recalculated Mr. Turner's retirement pay under a different method, under which he received higher compensation. AR300-01 [¶¶13-15]. DFAS now states that it failed to apply a required waiver under 10 U.S.C. § 1414(b)(1), which requires a retired servicemember to waive a dollar of retirement pay for every dollar he receives in disability compensation. AR301-02 [¶¶16-20]. DFAS recalculated Mr. Turner's retirement pay and determined that Mr. Turner had been overpaid by $91,647.95. AR302 [¶21]. DFAS informed Mr. Turner of the error and began withholding $56.07 per month to gradually recoup the overpayment. AR135-36; AR303 [¶22].

In October 2024, Mr. Turner filed a complaint in district court in New Mexico against three government agencies: the Department of Defense, the Internal Revenue Service (IRS), and the Social Security Administration. He then amended his complaint to address his retirement, his post-

retirement disability compensation, and DFAS's handling of his compensation. *Turner v. United States*, No. 24-1023, ECF No. 12 (D.N.M. Oct. 29, 2024) (amended complaint, also available at *Turner v. United States*, No. 24-1837, ECF No. 17-3 (Fed. Cl. Mar. 6, 2025)).

The next month, Mr. Turner filed suit in this court, disputing the board's decision and alleging that DFAS miscalculated his retirement pay and that the government had committed torts, including conversion, deceptive acts, and extortion. *Turner v. United States*, 176 Fed. Cl. 430, 432-33 (2025). While Mr. Turner's complaint was pending here, the New Mexico district court dismissed his case for lack of subject-matter jurisdiction and failure to state a claim. *Id*. at 433. This court dismissed Mr. Turner's complaint without prejudice for lack of subject-matter jurisdiction under 28 U.S.C. § 1500 because the earlier-filed complaint in the New Mexico district court was "for or in respect to the same claim." *Id.* at 434.

Mr. Turner then filed a new complaint here, raising concerns similar to those in his initial complaint before this court relating to his military service, the board's decision, and his retirement pay. ECF No. 1. Mr. Turner alleges unlawful attempts to reduce his disability pay, medical negligence, retaliation, fraud, and issues with DFAS's retirement and disability pay calculations. *Id.* at 4-5. Mr. Turner also disputes the board's disability rating. *Id.*

The government moves for partial dismissal of Mr. Turner's complaint and for judgment on the administrative record. ECF No. 20. Mr. Turner cross-moves for judgment on the administrative record and asks the court to ignore the administrative record considered by the board. ECF No. 22.

## II.    Discussion

The government moves for partial dismissal of Mr. Turner's complaint under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC) and for judgment on the administrative record with respect to the remaining claims under RCFC 52.1(c). ECF No. 20 at 1. The

government argues that this court lacks subject-matter jurisdiction over tort, criminal, tax, and time-barred issues and that the court cannot provide a legal remedy for any of Mr. Turner's other claims. *Id*. at 15-21. The government further argues there is substantial evidence sufficient to grant judgment on the administrative record on Mr. Turner's compensable disability rating and years of service. *Id.* at 13-15.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with the exclusive jurisdiction to decide specific types of monetary claims against the United States "in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). Under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1); *see Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). This court has traditionally held the pleadings of a pro se plaintiff to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (marks omitted)). Regardless, pro se plaintiffs still have the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See Landreth v. United States*, 797 F. App'x 521, 523 (Fed. Cir. 2020).

This court has jurisdiction over military pay claims under the Tucker Act. *Fisher v. United States*, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005). This court reviews the merits of military personnel decisions "under the same standard as any other agency action." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). Thus, the court determines whether the decision was "arbitrary,

capricious, unsupported by substantial evidence, or contrary to law." *Id.*; *see* 5 U.S.C. § 706(2)(A). Under 10 U.S.C. § 1201, a servicemember is entitled to compensation when the secretary of a military branch finds him to be unfit for duty because of a disability, the disability is "permanent and stable," and the disability is not a result of "intentional misconduct or willful neglect." *Fisher*, 402 F.3d at 1174-75.

RCFC 12(b)(6) requires a plaintiff to bring a claim on which this court can grant relief. On a motion to dismiss under RCFC 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court need not accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257, and *Iqbal*, 556 U.S. at 679).

Cross-motions for judgment on the administrative record are governed by RCFC 52.1(c). The court considers "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence of record." *Harmonia Holdings Group, LLC v. United States*, 20 F.4th 759, 766 (Fed. Cir. 2021) (quotation marks omitted). "RCFC [52.1] requires [this court] ... to make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005). The court then determines "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

When parties cross-move for judgment on the administrative record, each party must prove its own case to succeed. *See Mendez v. United States*, 103 Fed. Cl. 370, 378-84 (2012) (ruling on cross-motions for judgment on the administrative record after evaluating the plaintiff's and the government's arguments in turn against the administrative record). Mr. Turner bears the burden of showing by "cogent and clearly convincing evidence" that the board's actions were arbitrary and capricious. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quotation marks omitted). It is also his burden to overcome the "presumption of regularity that attaches to all administrative decisions," as well as "the strong, but rebuttable, presumption that administrators of the military … discharge their duties correctly, lawfully, and in good faith." *Chapman v. United States*, 92 Fed. Cl. 570, 577 (2010), *aff'd*, 427 F. App'x 897 (Fed. Cir. 2011) (quoting *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003), and *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997)). Mr. Turner must point out support for his positions in the administrative record to prevail on a motion for judgment on that record. *See Facility Healthcare Services, Inc. v. United States*, 158 Fed. Cl. 254, 257-58 (2022). The government likewise bears the burden of showing that it should prevail on its motion by showing that the board did not act arbitrarily or capriciously. *Mendez*, 103 Fed. Cl. at 378-84.

When reviewing the decision of the board, the court reviews factual findings for substantial evidence. *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). But nothing requires the court to grant either party's motion; the court is permitted to deny both parties' motions for judgment on the administrative record. *See Insight Public Sector, Inc. v.*

*United States*, 157 Fed. Cl. 416, 432-33 (2021) (denying each party's motion in part and remanding to the agency for further explanation).

### A. This court lacks jurisdiction over Mr. Turner's tort, criminal, and tax claims and claims that accrued more than six years ago

Mr. Turner raises tort, criminal, and tax claims. The government is correct that this court does not have jurisdiction over tort and criminal matters under 28 U.S.C. § 1491, and Mr. Turner's tax-related claim must be filed with the IRS before he can pursue it in this court. The court also lacks jurisdiction over issues that occurred during Mr. Turner's active service, which ended in 2015, because those claims are barred by the statute of limitations.

Under the Tucker Act, this court is generally barred from reviewing tort claims. 28 U.S.C. § 1491(a)(1) (giving this court jurisdiction over cases "not sounding in tort"). The Federal Tort Claims Act, 28 U.S.C. § 2671, gives federal district courts exclusive jurisdiction over tort claims.

In his complaint, Mr. Turner requests relief for "multiple torts" committed by the government that resulted in financial hardship and loss. ECF No. 1 at 1. Mr. Turner alleges that the government committed dishonest acts with "derogatory intent," conversion, medical malpractice, and fraud. ECF No. 1 at 8, 17-18; ECF No. 22 at 28, 53. Those claims are torts. *See Marketel International, Inc. v. Priceline.com, Inc.*, 36 F. App'x 423, 425 (Fed. Cir. 2002) (describing conversion as a claim sounding in tort); *Lewis v. United States*, 690 F. App'x 685, 686 (Fed. Cir. 2017) (affirming the court's decision to dismiss medical malpractice allegations for lack of jurisdiction); *Phu Mang Phang v. United States*, 388 F. App'x 961, 963 (Fed. Cir. 2010) (holding that fraud is a tort and that the Court of Federal Claims therefore lacked jurisdiction). The court, therefore, does not have jurisdiction over those claims.

Mr. Turner also alleges that his life insurance policy was canceled (ECF No. 1 at 32; ECF No. 22 at 83), but that is a dispute with a third party, not the government. This court lacks jurisdiction over complaints against third parties. 28 U.S.C. § 1491; *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Martin v. United States*, No. 22-1810, 2023 WL 1878576, at *3 (Fed. Cir. Feb. 10, 2023) ("[T]he court can only hear claims against the government; thus, it cannot hear claims brought against individuals.").

The court also lacks "jurisdiction over criminal matters generally." *Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011); *see* 28 U.S.C. § 1491. Mr. Turner alleges that the government committed "willful violation[s] of federal criminal law" (ECF No. 22 at 2), but he expresses "no interest in the litigation of crimes" (*id.* at 28). To the extent that Mr. Turner requests relief on criminal matters (*id.* at 11-12, 17), this court lacks jurisdiction over any of those claims. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994) ("The court has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.").

Mr. Turner may also be asserting a tax claim. Mr. Turner alleges that DFAS caused him financial loss through the tax implications of DFAS's actions. ECF No. 1 at 2; *but see* ECF No. 22 at 53 (alleging that DFAS took his money through a "tax"). The government argues that Mr. Turner must first file a claim with the IRS to satisfy statutory procedural requirements before pursuing his tax claim in this court. ECF No. 20 at 17. The government is correct that Mr. Turner must first file a claim with the IRS before bringing a tax claim here. Under the Internal Revenue Code, "[n]o suit or proceeding shall be maintained in any court … until a claim for refund or credit has been duly filed with the Secretary" of the Treasury. 26 U.S.C. § 7422(a). Because Mr. Turner has not alleged

that he filed a claim with the IRS before filing this suit or provided any evidence to that effect, the court cannot hear his tax claim.

Mr. Turner also requests relief for events that took place more than six years ago. This court does not have jurisdiction over a claim "unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see John R. Sand & Gravel Company v. United States*, 552 U.S. 130, 133-35 (2008) (stating that this court's statute of limitations is jurisdictional). "A claim first accrues when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009).

Mr. Turner alleges that, before he retired, the government failed to fulfill its medical responsibilities, committed medical malpractice, and made a fraudulent entry regarding his voluntary retirement. ECF No. 22 at 24-26. Mr. Turner also raises a claim specific to a neck injury he sustained in 1998. *Id.* at 3. The government notes that those events all occurred at least ten years ago. ECF No. 20 at 20-21. Because those claims accrued more than six years ago, they are time barred, and the court lacks jurisdiction over them. 28 U.S.C. § 2501.

**B.    The administrative record supports the board's decision, but DFAS's recoupment calculations are unclear**

The government asserts that the administrative record supports the board's decision, and DFAS reasonably began to recoup an overpayment. ECF No. 20 at 13-15, 21-27. This court will not modify the board's decision unless it is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz*, 466 F.3d at 998; *see* 5 U.S.C. § 706(2)(A). The court reviews a decision of a military corrections board under the Administrative Procedure Act (APA); the court's review is generally limited to the existing administrative record. *Walls v. United States*, 582 F.3d

1358, 1367 (Fed. Cir. 2009); *Metz*, 466 F.3d at 998. The administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." *Walls*, 582 F.3d at 1368.

### 1. The court reviews the board's decision on the administrative record

In his cross-motion for judgment on the administrative record, Mr. Turner asks the court to "completely ignore the [U.S. government's] administrative record with modified allowances" and instead examine the materials attached to his brief as an "addition to the Administrative record." ECF No. 22 at 1, 66. The government asks the court to deny the request to disregard the administrative record and argues that Mr. Turner has not met the standard for supplementing that record. ECF No. 25 at 13. But the government does not oppose Mr. Turner's request to include certain documents that Mr. Turner attached to his brief. *Id*. at 14 & n.6 (not opposing the inclusion of documents Mr. Turner provided at ECF No. 22 at 120-32 in the administrative record, not opposing the inclusion of the bank record from ECF No. 22 at 115 for purposes of addressing the motion to dismiss, and stating that the document at ECF No. 22 at 116-17 is already present in the administrative record).

The court can supplement the record in limited circumstances, but it generally reviews the existing record. *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Id.* (quotation marks and emphasis omitted). The court should not use "new evidence to convert the arbitrary and capricious standard into effectively de novo review." *Id*. at 1380 (quotation marks omitted). "Thus, supplementation of the record should be limited to cases in which the

omission of extra-record evidence precludes effective judicial review." *Id*. (quotation marks omitted).

Mr. Turner has not shown that the court cannot effectively review his case on the existing administrative record plus the documents he provided that the government does not oppose. The court will therefore consider the existing administrative record plus the documents that the government does not oppose as part of the record. *See* ECF Nos. 14-1, 14-2; ECF No. 25 at 12-14.

### 2.      The board's decision is supported by substantial evidence

The court agrees with the government that substantial evidence supports the board's decision. ECF No. 25 at 15. The board reviewed advisory opinions from the Air Force Personnel Center, the board's medical advisor, and the board's psychological advisor. AR15-16. The board's decision appropriately weighed the advisory opinions and relevant medical records. *See* ECF No. 14-2 at 3-5. The board's decision was neither arbitrary nor capricious, and the record does not support a higher disability rating.

The administrative record does not require the military to change Mr. Turner's disability rating to 75 percent (*see* ECF No. 1 at 4). The board corrected Mr. Turner's retirement status from a length-of-service retirement to a medical retirement with a 70 percent compensable disability rating. AR15; AR19. The board awarded that 70 percent disability rating based on Mr. Turner's demonstrated major depressive disorder with generalized anxiety under the Department of Veterans Affairs' schedule for rating mental disorders, code 9434. AR19. Under 38 C.F.R. § 4.130, the general rating formula for mental disorders, including code 9434 for major depressive disorder, provides for disability ratings of 0, 10, 30, 50, 70, or 100 percent. Mr. Turner's suggested disability rating of 75 percent is an unavailable value, and no adjudicator or advisor ever suggested a value above 70 percent.

12

Mr. Turner states that the board's 70 percent disability rating did not reflect the "medical evidence of severity," including his condition of fibromyalgia. ECF No. 22 at 33, 42. But, as the government notes, there is no medical evidence in the record to support a 75 percent disability rating, or anything above 70 percent; there are only Mr. Turner's own arguments. ECF No. 20 at 14. When the board gave Mr. Turner a 70 percent disability rating, it notified him in writing and told him about his right to contest the board's decision. AR20. He did not contest it. ECF No. 14-2 at 5. Based on the administrative record, the board reasonably assigned Mr. Turner a disability rating of 70 percent.[2]

Mr. Turner also argues that the board did not address his sleep apnea in considering his disability rating. ECF No. 22 at 55. But the medical advisor considered Mr. Turner's sleep apnea. The medical advisor discussed Mr. Turner's sleep apnea diagnosis and the continuous positive airway pressure study, designed to determine how to manage Mr. Turner's sleep apnea. ECF No. 14-2 at 36. The medical advisor stated that "it is highly unlikely that [Mr. Turner] would have been found unfit due to Obstructive Sleep Apnea, since he was prescribed effective CPAP [continuous positive airway pressure] treatment." ECF No. 14-2 at 39. The board was not arbitrary or capricious in noting the opinion of the medical advisor without discussing the sleep apnea diagnosis substantively in its decision. *Id.* at 4-6 (record of board proceedings reiterating findings by the medical advisor); *see Novartis AG v. Torrent Pharmaceuticals Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) ("[F]ailure to explicitly discuss every issue or every piece of evidence does not alone

---

[2] In one place, the government's brief states that the board "relied on record evidence when assigning Mr. Turner a disability rating of 75%." ECF No. 20 at 13. But that statement is evidently a typographical error, as the rest of the government's position argues for a 70 percent disability rating.

establish that the tribunal did not consider it."). Substantial evidence supports the board's decision that Mr. Turner's sleep apnea did not affect his disability rating. *See Metz,* 466 F.3d at 998.

The administrative record also supports Mr. Turner's twenty years of service in the Air Force. Mr. Turner asserts that the board did not appropriately account for his training and education. He argues that he should have received credit for 24 years of service, from June 1991 to June 2015, implying that he should have received four years' worth of education credits. ECF No. 1 at 1; ECF No. 14-2 at 3; *see also* ECF No. 22 at 32, 111. The Air Force Personnel Center reviewed Mr. Turner's request for credits from Defense Acquisition University courses and determined that the courses were ineligible for service credit. ECF No. 14-2 at 45. The Air Force Personnel Center added that, if a course does not match the military's course code in its database or on its education and training course announcements website, the military is not authorized to add the course to a servicemember's official training records. *Id*. Substantial evidence supports that determination, and Mr. Turner provides no basis to disturb it.

Finally, the board appropriately dismissed Mr. Turner's allegation that the military fabricated the record of his schizophrenia (ECF No. 14-2 at 11); the psychological advisor found that there was no such record (ECF No. 14-2 at 5-6, 43). The court, therefore, will grant the government's motion for judgment on the administrative record in part.

### 3. DFAS's recoupment calculation is not clear based on the administrative record

Mr. Turner initially retired in 2015 with a sufficient length of service and concurrently received both retirement pay and disability compensation. AR299 [¶¶6-8]. DFAS states that Mr. Turner received a gross monthly retirement payment of $3,640 (rounded down to the nearest whole dollar). *Id.* ("[H]is retired pay was computed by multiplying his high 36 month average under 10 U.S.C § 1407 ($7,281.97) by his retired pay multiplier (2.5 x 20 Years of Service = 50%) under

10 U.S.C § 1409."). As a length-of-service retiree with at least twenty years of service and a service-connected disability rating of at least 50 percent, Mr. Turner qualified for the exception under 10 U.S.C. § 1414(a)(1) to receive concurrent payments. *Id*.

In 2019, in response to one of Mr. Turner's applications, the board corrected his record from length-of-service retirement under 10 U.S.C. § 8911 to disability retirement under 10 U.S.C. § 1201. AR300 [¶11]. DFAS recalculated Mr. Turner's retirement pay using both "Method A" and "Method B" to select the higher amount. AR300 [¶15]. Under Method B, DFAS calculated $3,640 per month, the same total as his length-of-service retirement; under Method A, DFAS calculated $5,097 per month. AR300-01 [¶¶13-14] ("[$]7281.97 x 70% disability = $5,097.38, rounded down to the nearest dollar."). Because Method A yielded the higher amount, DFAS began to pay Mr. Turner at that rate. AR301 [¶15].

Mr. Turner takes issue with the calculation of his retirement pay. ECF No. 22 at 23. DFAS appropriately determined Mr. Turner's length-of-service retirement pay based on his highest three years of salary, as the government argues (ECF No. 25 at 10). *See Hutchinson v. United States*, 168 Fed. Cl. 504, 514 (2023) (explaining how retirement pay is calculated under 10 U.S.C. § 1401). Mr. Turner provides no argument or evidence that the government's choice to use that salary base was incorrect. Mr. Turner also makes a claim for combat-related special compensation. ECF No. 22 at 52-53, 63. That claim fails, too. There is no evidence from the administrative record that Mr. Turner applied for combat-related special compensation, and he would have had to apply for it to receive it. 10 U.S.C. § 1414(d)(2) (creating an annual period when a person can elect to receive combat-related special compensation in lieu of retired pay or vice versa according to regulations promulgated by the Secretary of Defense); *see Department of Defense Financial Management Regulation*, vol. 7B, ch. 63, ¶3.1 (June 2024) (A "member may not be paid [combat-related special

15

compensation] unless" the member "has applied for and elected to receive" combat-related special compensation.).[3]

But the government does not sufficiently explain DFAS's determination that it needed to recoup an overpayment or how it calculated the amount to recoup. DFAS states that it erred when it began paying Mr. Turner at the Method A rate without accounting for the special rule for Chapter 61 disability retirees under 10 U.S.C. § 1414(b). AR301-02 [¶¶15-20]. That special rule requires a retired member with more than twenty years of service to waive his military retired pay, dollar-for-dollar, to receive disability compensation. AR301-02 [¶17]. In other words, the rule incorporates the common-sense proposition that a servicemember cannot receive a windfall by receiving compensation twice for having retired with disability compensation. Based on the special rule, DFAS stated that Mr. Turner was limited to the amount by which the disability retired pay ($5,097) exceeds the military retired pay ($3,640), or a total $1,457. AR302 [¶¶18-19] ("$5,097.00 minus $3,640.00 = $1,457.00."). DFAS then limited Mr. Turner's retirement pay, which he could receive concurrently with disability compensation, to $3,640. *Id.* DFAS cited an error as the reason for the previous overpayment and thus the reason for DFAS's determination that it had to recoup some of Mr. Turner's pay. *Id.* [¶20].

Neither the administrative record nor the government's briefs clearly explain how Mr. Turner's corrected retirement pay and recoupment were calculated, resulting in a total overpayment of $91,647. AR302 [¶21]; ECF No. 20 at 23-24; ECF No. 25 at 12. It is unclear why Mr. Turner's disability retirement pay would not entitle him to any additional pay above what he would be owed for length-of-service retirement. If the 70 percent disability rating would not result in any

---

[3] In its response brief, the government cites the 2015 version of chapter 63 of the Department of Defense Financial Management Regulation. ECF No. 25 at 11. The language cited by the government is consistent with the June 2024 version.

benefit above a length-of-service retirement, it is unclear why the board went to the trouble to calculate a 70 percent disability rating. Neither the administrative record nor the government's briefs explain why the length-of-service retirement pay equals the Method B calculation amount, both $3,640 per month, and the higher Method A amount has no effect. It is not evident that the Method A calculation would result in a windfall or double recovery for Mr. Turner. In sum, the administrative record does not support, at least without more evidence or explanation, DFAS's recoupment calculation. The court will therefore deny the government's motion for judgment on the administrative record with respect to the recoupment calculation.

## III. Conclusion

For the reasons stated above, this court **grants** the government's partial motion to dismiss (ECF No. 20). The court **grants in part and denies in part** the government's motion for judgment on the administrative record (ECF No. 20); the court denies the motion with respect to the DFAS recoupment calculation issue and grants the motion with respect to the other issues. The court **denies** Mr. Turner's cross-motion for judgment on the administrative record (ECF No. 22). The court **grants in part and denies in part** Mr. Turner's motion to supplement the administrative record (ECF No. 22), as the court will accept the documents discussed above but will not accept Mr. Turner's invitation to ignore the administrative record the government provided. The court will schedule a status conference with the parties to discuss a possible referral to the court's pro bono program and possible supplemental briefing on the issues that remain in the case.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge

17